IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA,

v.                                                                Case No. 2:15cr159

JEFFREY FREEMAN,

                            Defendant.


**POSITION OF DEFENDANT WITH RESPECT TO SENTENCING FACTORS**

COMES NOW the Defendant, Jeffrey Freeman, by counsel, in accordance with Rule 32 of

the Federal Rules of Criminal Procedure, Section 6A1.2 of the *Sentencing Guidelines and Policy*

*Statements* as well as this Honorable Court's Sentencing Procedure's Order, and hereby represents

that Mr. Freeman has reviewed the Presentence Investigation Report and that he does not have any

objections to the report that are material to the guideline calculations. [1]

**Background**

Mr. Freeman is before this Honorable Court having pled guilty to Count One of the

Indictment - Possess with Intent to Distribute Cocaine, in violation of 21 U.S.C. §841(a)(1) and

§841(b)(1)(B).  The sentencing hearing is scheduled for May 11, 2016, at 2:00 p.m., before Chief

United States District Judge Rebecca Beach Smith.

A Presentence Investigation Report has been prepared and the total offense level is twenty-

---

[1]

Mr. Freeman objects to the factual summary contained in paragraph 31.  There is no dispute as to the veracity of the
documentation relied upon to author said paragraph.  However, counsel is of the position that the information authored
in Paragraph 31 is not consistent with the testimony adduced at the jury trial in the matter.  The defendant seeks no ruling
on this objection, however, and requests that this Honorable Court determine that resolution of the controverted matter
is unnecessary either because it will not affect sentencing or will not be considered.  FED. R. CRIM. P. 32(i)(3)(B).

one with a Criminal History Category of II, which would yield an advisory guideline range of forty-one to fifty-one months; however, the advisory guideline range is restricted to sixty months. This range is restricted due to the fact that the United States Sentencing Guideline custody range of forty-one to fifty-one months is less than the statutory minimum penalty for Count One, sixty months.

As a result of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the federal sentencing guidelines are no longer mandatory but advisory. In this pleading, Mr. Freeman will address the factors contained in Title 18 U.S.C. § 3553(a) and will respectfully request that this Honorable Court impose the mandatory minimum sentence of sixty months. Such a sentence complies with the sentencing factors of 18 U.S.C. § 3553(a).

## The Mandatory Minimum Sentence Is
## Sufficient To Comply With The Sentencing Factors of 18 U.S.C. 3553(a)

The advisory sentencing guideline range in this case is restricted due to the mandatory minimum sentence of sixty months. If the guideline range was not restricted, the advisory sentencing guideline range would be forty-one to fifty-one months.

Mr. Freeman respectfully submits that the mandatory minimum of sixty months is appropriate as said sentence exceeds the high end of the advisory sentencing guideline range and is sufficient, but not greater than necessary to comply with the sentencing factors of 18 U.S.C. § 3553(a).

## Section 3553(a) Factors

In determining Mr. Freeman's sentence, this Honorable Court is to consider:

(1) the nature and circumstances of the offense and the history and characteristics of Mr. Freeman;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of Mr. Freeman; and

(D) to provide Mr. Freeman with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for [the offense];

(5) any pertinent policy issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

### Nature and Circumstances of the Offense

The offense conduct is set forth on page three, paragraph five, of the Presentence Investigation Report. On November 9, 2015, while traveling on United States Route thirteen, a Special Agent with the Virginia State Police initiated a traffic stop of Mr. Freeman's vehicle for speeding. After Mr. Freeman's vehicle was stopped, a second law enforcement officer arrived on the scene to assist and utilized a narcotic detector canine to conduct a sniff of the exterior of Mr. Freeman's vehicle. The canine indicated a positive response for the presence of a controlled substance.

A subsequent search of the vehicle revealed approximately two hundred twenty-nine grams of a substance which field tested positive for cocaine and a small amount of marijuana; both

quantities were concealed in a potato salad container, which was recovered in the passenger rear floorboard. Following Mr. Freeman's arrest, a search of his residence led to the discovery of approximately two hundred ninety grams of cocaine.

Mr. Freeman freely admitted his guilt in court at the time of his guilty plea and has accepted responsibility for his criminal conduct. During the interview with the United States Probation Officer, he admitted involvement in the offense, agreed with the Statement of Facts and expressed remorse for his criminal conduct. (*See* Presentence Investigation Report ¶14).

## History & Characteristics of Mr. Freeman

### Upbringing:

Mr. Freeman is forty-four years of age. He was born to the non-marital union of his mother and father and he was raised primarily by his mother in the Bronx, New York. Although his father did not live in the family home, Mr. Freeman had frequent, monthly contact with his father and he was a positive father figure in Mr. Freeman's life. There was no physical, mental, emotional or sexual abuse in the home, all of his basic needs were met and his family was a tight-knit group.

Mr. Freeman's parents both died in 2005 and because he was incarcerated at the time of both deaths, Mr. Freeman was unable to attend either parent's funeral. According to Mr. Freeman's niece, Mr. Freeman has not been the same person since the death of his parents. (*See* Presentence Investigation Report ¶42).

Although Mr. Freeman has never been married, he has two adult children with whom he has regular, weekly contact. Although he was incarcerated during much of their formative years, his

oldest son describes Mr. Freeman as a "great dad no matter what he is going through." (*See* Presentence Investigation Report ¶ 39).

**Substance Abuse:**

Mr. Freeman first consumed alcohol at approximately fourteen years of age. He began smoking marijuana at approximately fifteen years of age and smoked daily until his arrest on the instant offense. Mr. Freeman began experimenting with cocaine at approximately seventeen years of age.

While incarcerated in New York, Mr. Freeman successfully participated in and completed a residential substance abuse program. Once he was released from incarceration and released on parole, Mr. Freeman submitted negative urine screens while on supervision and ultimately successfully completed and was released from parole in June of 2012.

Unfortunately, although Mr. Freeman was able to successfully refrain from the use of illicit drugs while on probation and parole, after his successful completion of parole, Mr. Freeman began using illicit drugs once again and quickly found himself addicted. Based upon his ability to successfully complete substance abuse treatment and his demonstrated ability to refrain from the use of illicit drugs in the past, there is no question that Mr. Freeman can once again live a drug free existence in the future. He is completely amenable to the treatment and programming available to him within the Bureau of Prisons.

**Education and Employment history:**

As a result of being incarcerated prior to his graduation, Mr. Freeman did not successfully graduate from high school; however, he passed his General Education Development test in 1998 while in prison in New York.

Beginning in 2007 and lasting until 2013, Mr. Freeman enjoyed and maintained a steady history of lawful, gainful and tax-reporting employment. From November 2007 until June 2008, Mr. Freeman was gainfully employed as a full-time factory worker at NGK - Locke Polymer Institutes in Virginia Beach.

Documentation from this employer noted that Mr. Freeman was a punctual and hard-working associate who accepted assignments well and without hesitation. As noted in the Presentence Investigation Report, and corroborated by documentation received from NGK - Locke Polymer Institutes, Mr. Freeman left this job for another job opportunity. (*See* Presentence Investigation Report ¶49).

From 2008 until 2013, Mr. Freeman was gainfully employed as a full-time warehouse order selector at Military Produce Group in Norfolk, Virginia, where he was earning sixteen dollars per hour. The work that Mr. Freeman performed for this company was physically demanding. Long hours and heavy lifting left Mr. Freeman overworked physically and he eventually quit as a result of the physical toll that it took on him. As noted in the Presentence Investigation Report, Mr. Freeman suffers "from a herniated disk and bone spurs in his spine". (*See* Presentence Investigation Report ¶41).

Unfortunately, despite having been gainfully employed with Military Produce Group for approximately five years, Mr. Freeman struggled to find employment thereafter. From April 2013 until his arrest in November 2015, Mr. Freeman supported himself with odd jobs, a personal loan from Navy Federal Credit Union and selling illicit drugs. Mr. Freeman's niece corroborated this information and related that she had no idea why Mr. Freeman reverted back to his old lifestyle other than the fact that he was too prideful to ask for financial assistance while struggling to find gainful, full-time employment. *(See* Presentence Investigation Report ¶47).

**Prior Criminal Record:**

Mr. Freeman is keenly aware of his prior criminal record, which dates back to 1988 when Mr. Freeman was adjudicated delinquent of Disorderly Conduct at sixteen years of age. His criminal history tells the story of a young man who was involved in illegal activity as evidenced by his convictions for Robbery - First Degree and Criminal Possession of Stolen Property - Third Degree, in 1989, at the age of eighteen; Unlawful Possession of Marijuana and Attempt Criminal Sale of Controlled Substance - Third Degree, in 1995, at the age of twenty-three. (*See* Presentence Investigation Report ¶¶28-30).

After serving the respective sentences for the aforementioned offenses, Mr. Freeman had periods of compliance and noncompliance while on parole. For example, he was released on parole on April 16, 1992, but after being arrested on new charges, his parole was revoked in 1996 (*See* Presentence Investigation Report ¶28). Additionally, Mr. Freeman was released from custody and began parole on November 13, 1998, and three years later, in January of 2001, his parole was declared delinquent as he was arrested for new offenses. (*See* Presentence Investigation Report ¶29).

On January 1, 2001, Mr. Freeman was arrested and charged with Criminal Possession of Weapon (Third Degree and Second Degree), Manslaughter, and Reckless Endangerment.

The victim in the case was his then girlfriend of three years, who at the time, was eight months pregnant with their child. After testimony at the jury trial that a female brought the gun to the apartment, the gun discharged, striking and killing his girlfriend and unborn child, a jury acquitted Mr. Freeman of the Manslaughter and Reckless Endangerment charges. The jury convicted Mr. Freeman of the Criminal Possession of a Weapons charges and he was released from incarceration in 2007. (Please see attached Defendant's Exhibit A, Affidavit authored by Stacey Van

Malden, Esquire, trial attorney for Jeffrey Freeman, Supreme Court, Bronx County, New York, Docket No.: 0414-01).

According to the Presentence Investigation Report, during his periods of incarceration, Mr. Freeman was a model inmate. While he was in custody, it is clear that Mr. Freeman took full advantage of the program opportunities afforded him. For example, Mr. Freeman worked in food service, worked as a recreation aide and worked as a teacher's aide. He completed aggression replacement training and phase III of transitional services and participated in residential substance abuse treatment. He had no disciplinary reports while in custody and made his initial appearance before the parole board in February of 2007. He was released on parole in May of 2007 and his parole was transferred from New York to Virginia where he relocated and lived with his niece.

While on supervision, Mr. Freeman maintained employment and submitted negative urine screens. Despite receiving two traffic infractions, Mr. Freeman was successfully discharged from parole in June of 2012.

**Mental Health:**

Mr. Freeman "reported no history of psychological or psychiatric treatment and there is no documented evidence to suggest otherwise." (*See* Presentence Investigation Report ¶42).

While Mr. Freeman enjoyed a fairly unremarkable childhood absent of abuse or neglect, his adulthood has been plagued with trauma and a number of losses. One of these traumatic incidents resulted in the deaths of his longtime girlfriend and unborn child. Another major incident involving a significant loss was the unexpected death of his sister during hip surgery in 2015. Lastly and significantly, Mr. Freeman lost both his mother and father within a short period of time and was unable to attend their funerals due to his incarceration. It is noteworthy that Mr. Freeman has never received therapeutic treatment to address his grief and loss issues.

**The Need for the Sentence to Reflect the Seriousness of the Offense/Promote Respect**

**for the Law/Provide Just Punishment/Afford Adequate Deterrence**

Mr. Freeman respectfully submits that a sentence of sixty months of imprisonment would reflect the seriousness of the offense, promote respect for the law, provide just punishment to Mr. Freeman and afford adequate deterrence to both Mr. Freeman and the public at large. A sentence in excess of sixty months of imprisonment would not promote respect for the law and would amount to excessive punishment considering the facts and circumstances of this case. Mr. Freeman has pleaded guilty and he has accepted responsibility for his criminal behavior.

**Protecting the Public from Mr. Freeman**

A sentence of sixty months of imprisonment is more than sufficient to protect the public from potential future crimes of Mr. Freeman. He is forty-four years of age now and upon his release, if given a sentence of sixty months, Mr. Freeman will be close to fifty years old. With the renewed support, love and guidance from his family, Mr. Freeman will not feel the need to resort to criminal activity to support himself.

**Providing Mr. Freeman with needed Educational/Vocational/Correctional Treatment**

A sentence of sixty months of imprisonment is sufficient, but not greater than necessary to provide Mr. Freeman with needed educational or vocational training, medical care, or other correctional treatment. Mr. Freeman could benefit from an additional trade or vocation, and is hopeful to pursue his Commercial Driver's License while in custody. He is willing to take advantage of and looks forward to participating in the vocational training programs offered by the Bureau of Prisons while incarcerated. In addition, Mr. Freeman would like to participate in both substance abuse and mental health treatment while incarcerated to help deal with his substance abuse issues and his grief and loss issues.

### Kinds of Sentences Available/Sentencing Range/Policy Statement

The statutory range of punishment is five years to forty years. The advisory guideline range is restricted to sixty months due to the mandatory minimum that th Court must impose. Sixty months is well above the forty-one to fifty-one advisory guideline range, had the guideline range not been restricted. The mandatory minimum sentence of sixty months of imprisonment is available and is a substantial punishment.

### Conclusion

For the reasons advanced above, Mr. Freeman respectfully requests a sentence consistent with the mandatory minimum of sixty months to be imposed. This sentence is sufficient, but not greater than necessary to satisfy the sentencing factors set forth in 18 U.S.C. § 3353(a).

Respectfully submitted,

JEFFREY FREEMAN

By_____/s/_____
                    Of Counsel

Kirsten R. Kmet
VSB No. 47786
Counsel for Jeffrey Freeman
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
757-457-0850 (telephone)
757-457-0880 (telefax)
kirsten_kmet@fd.org

### CERTIFICATE OF SERVICE

I certify that on this 4th day of May 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification (NEF) to:

Eric Hurt
Assistant United States Attorney
Office of the United States Attorney
721 Lakefront Commons, Suite 300
Newport News, Virginia 23606
eric.hurt@usdoj.gov

And I hereby certify that I have mailed the document by U.S. Mail to the following non-filing user:

Leah D. Greathouse
United States Probation Officer
United States Probation Office
600 Granby Street
Norfolk, Virginia 23510

_____/s/_____
Kirsten R. Kmet
VSB No.: 47786
Counsel for Jeffrey Freeman
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
757-457-0850 (telephone)
757-457-0880 (telefax)
kirsten_kmet@fd.org
